# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOBILE NOW, INC., <br><br> Plaintiff, <br><br> v. <br><br> SPRINT CORPORATION, <br><br> Defendant. | Civil Action No. 19-918 (JDB) |

## MEMORANDUM OPINION

Sprint is one of the largest wireless telecommunications carriers in the United States. For years, Mobile Now acted as one of Sprint's "authorized representatives," selling Sprint-branded products in brick-and-mortar stores and online in return for certain payments and commissions. In 2019, Sprint terminated its contracts with Mobile Now, alleging that the company had engaged in fraudulent practices. Mobile Now has since brought this action against Sprint alleging, among other things, fraud, breach of contract, and defamation. Currently pending before the Court is [24] Sprint's motion to compel arbitration. Sprint argues that Mobile Now executed an agreement with Sprint containing a dispute resolution procedure that mandates binding arbitration of Mobile Now's claims. Mobile Now does not dispute that it executed the agreement, but argues, among other things, that the dispute resolution procedure is unenforceable because it was fraudulently induced and is unconscionable. For the reasons that follow, the Court will grant Sprint's motion to compel arbitration.

1

## BACKGROUND

### I. FACTS

In 2018, Sprint Solutions, Inc. and Mobile Now, Inc. executed an Authorized Representative Agreement. Am. Compl. [ECF No. 15] ¶¶ 48–49; Ex. 1 to Am. Compl. ("Agreement") [ECF No. 29-1].[1] The Agreement, a version of which the parties negotiated and renewed every few years, set forth the parties' basic business relationship and granted Mobile Now the non-exclusive right to sell customers Sprint products and services. See Agreement at 2–3. The Agreement covered, among other things, compensation—including for selling Sprint service plans and "Sprint Prepaid" services—and, in a three-page exhibit, dispute resolution. See Agreement at 2–3, 61–63;[2] Am. Compl. ¶¶ 92–95. The parties separately executed a Prepaid Distribution Agreement, which pertained to Mobile Now's distribution of certain Sprint prepaid products and services. Am. Compl. ¶¶ 92–95; Def.'s 2nd Mot. & Mem. of Law in Supp. of Mot. to Compel Arbitration ("Mot. to Compel") [ECF No. 24] at 17 n.7.

The dispute resolution exhibit set forth detailed procedures governing any "Dispute," defined broadly to include "any controversy, dispute, or claim of every kind . . . and nature arising out of or relating to the negotiation, construction, validity, interpretation, performance, enforcement, operation, breach, continuation or termination" of the Agreement. Agreement at 61. Except as elsewhere provided in the Agreement, Mobile Now and Sprint "each waive[d] its respective right . . . [t]o litigate Disputes in court." Id. at 62. If a Dispute arose, Sprint first "ha[d] the right to require that [it] be submitted to mediation." Id. at 61. If Sprint decided not to elect

---

[1] Although the Court largely cites the redacted version of the Agreement, it has considered the full text of the sealed Agreement. See Ex. 1 to Compl. ("Sealed Agreement") [ECF No. 2-2] at 43–46.

[2] Because the Agreement and the exhibits thereto contain no page numbers, the Court will refer to the page number of the cited PDF document at ECF No. 29-1.

mediation or if mediation failed, Disputes could be pursued "by filing an arbitration." Id. "[A]rbitration [would] be governed by the Wireless Industry Arbitration Rules of the [American Arbitration Association]," at a location chosen by Sprint, by arbitrators chosen by both parties, with each party paying one-half of the arbitrator's expenses. Id. The dispute resolution procedure "continue[d] in full force and effect after the expiration or termination of" the Agreement. Id. at 63. Finally, the Agreement provided that "[i]t [was] expressly understood by [Mobile Now] that this dispute resolution process may only be invoked regarding Sprint's right to terminate the . . . Agreement after the termination has gone into effect." Id. at 61.

Mobile Now does not dispute that the parties negotiated the Agreement containing this dispute resolution procedure for almost a year. See Am. Compl. ¶¶ 28–32. During that time, the parties agreed to various changes memorialized in an Addendum. See Ex. 3 to Pl.'s Sealed Mot. for Leave to File Docs. Under Seal ("Addendum") [ECF No. 2-3] at 2–6. The Addendum did not alter or affect the Agreement's dispute resolution procedure. See id. Instead, the dispute resolution provisions remained substantively identical to the procedure Mobile Now had agreed to in previous years. Compare Agreement at 61–63, with Ex. A to Keen Decl. in support of First Mot. to Compel Arbitration ("2011 Authorized Representative Agreement") [ECF No. 20] at 59–61, and Ex. B to Keen Decl. in support of First Mot. to Compel Arbitration [ECF No. 21] ("2014 Authorized Representative Agreement") at 97–100.

On March 19, 2019, Sprint sent Mobile Now a notice that it was terminating the Agreement. Am. Compl. ¶¶ 64–65; Ex. 3 to Compl. [ECF No. 18] at 1. Sprint alleged in its notice that Mobile Now had engaged in a fraudulent practice called "slamming" or "cramming," which involved "automatically enrolling new customers into [value-added service programs] irrespective of whether the customer(s) knew of or asked to join those programs." Mot. to Compel at 4

3

(emphasis omitted); Am. Compl. ¶¶ 67. The same day, Sprint sent a notice that it was terminating the Prepaid Distribution Agreement on the same grounds. Am. Compl. ¶ 96.

## II. PROCEDURAL HISTORY

Mobile Now brings five claims against Sprint.[3] Am. Compl. ¶¶ 103–142. Count One alleges that Sprint engaged in a fraudulent scheme to induce Mobile Now to sign the Agreement. Id. at ¶¶ 103–12. Count Two alleges that Sprint breached the Agreement by, among other things, failing to pay Mobile Now certain amounts owed under its terms. Id. at ¶¶ 113–16. Count Three alleges that Sprint breached the Prepaid Distribution Agreement by failing to pay commissions owed under that contract. Id. at ¶¶ 117–19. Count Four alleges that Sprint breached a contract implied in fact concerning the resale of certain Sprint products and accessories in exchange for commissions. Id. at ¶¶ 120–27. Count Five alleges that Sprint defamed Mobile Now by sharing the notice of termination of the Agreement with at least two third parties in the telecommunications industry. Id. at ¶¶ 128–39.

In response, Sprint has filed a motion to compel arbitration of all five claims under the Agreement's dispute resolution procedures. Mot. to Compel at 16–18. Mobile Now opposes the motion, arguing, among other things, that the dispute resolution procedure was fraudulently induced and is unconscionable. Mem. in Opp'n to Mot. to Compel ("Opp'n") [ECF No. 26] at 1, 28–29, 36–37. Mobile Now further contends that, even if the dispute resolution procedure is valid, at least two of Mobile Now's claims fall outside the scope of the Agreement's dispute resolution procedures. Id. at 35–36. The motion has been fully briefed and is ripe for resolution.[4]

---

[3] The complaint also includes a sixth count seeking a declaratory judgment that the Agreement's arbitration clause is "invalid, unenforceable, illusory, or otherwise void for lack of mutuality." Am. Compl. ¶¶ 140–42.

[4] Six weeks after briefing on the motion to compel concluded, Mobile Now filed what it styled a "notice of supplemental authority." See Notice of Suppl. Authority [ECF No. 35]. The notice, however, does not alert the Court to any relevant intervening authority. Instead, it attaches five new exhibits in response to Sprint's reply. See id. at 1–2. Because Mobile Now's "notice" is effectively an untimely surreply filed without leave of the Court, it need not be

4

## LEGAL STANDARD

The standard governing a motion to compel arbitration is the same one used to resolve summary judgment motions pursuant to Federal Rule of Civil Procedure 56(c). The motion is treated "as if it were a request for summary disposition of . . . whether or not there had been a meeting of the minds on the agreement to arbitrate." Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 531 F.3d 863, 865 (D.C. Cir. 2008) (internal citation and quotation marks omitted). The party moving to compel—here, Sprint—must first present evidence sufficient to show an enforceable agreement to arbitrate. Skrynnikov, 943 F. Supp. 2d at 175–76. The burden then shifts to the party opposing arbitration—here, Mobile Now—to establish a genuine issue of material fact as to the making or validity of that agreement. Id. "The Court will compel arbitration if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mercadante v. XE Servs., LLC, 78 F. Supp. 3d 131, 136 (D.D.C. 2015) (quoting Haire v. Smith, Currie & Hancock LLP, 925 F. Supp. 2d 126, 129 (D.D.C. 2013)).

## ANALYSIS

Neither party disputes that this case is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14. See Mot. to Compel at 8; Opp'n at 19–20. The FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "[E]nacted . . . in response to widespread judicial hostility to arbitration agreements," the FAA "reflect[s] both

---

considered. See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d 270, 276 (D.D.C. 2002) ("A surreply may be filed only by leave of Court, and only to address new matters raised in a reply, to which a party would otherwise be unable to respond."). Even were the Court to consider the surreply, however, it would not alter the result. The new exhibits Mobile Now has submitted are tangential to the issues presented and otherwise unpersuasive.

a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal citations and quotation marks omitted).

Section 2 of the FAA provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. When a party moves to arbitrate in a case governed by section 2 of the FAA, a court's role is limited to determining whether there is a valid agreement to arbitrate, and whether the specific dispute falls within the scope of the arbitration agreement. Shelton v. The Ritz Carlton Hotel Co., 550 F. Supp. 2d 74, 79 (D.D.C. 2008); see also Nelson v. Insignia/Esg, Inc., 215 F. Supp. 2d 143, 149–150 (D.D.C. 2002). In so doing, courts must, "as a matter of federal law," resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." Moses H. Cone, 460 U.S. at 24–25.

### I. VALIDITY OF THE AGREEMENT TO ARBITRATE

To determine whether the parties have executed a valid arbitration agreement, federal courts apply state contract law. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686–87 (1996); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Before turning to the merits, the Court must therefore address the parties' preliminary dispute concerning what state law applies. Sprint contends that Kansas law applies, pointing to a choice-of-law provision in the Agreement. See Mot. to Compel at 10. Mobile Now disagrees, arguing that, because the entire Agreement is unenforceable as a matter of law, the choice-of-law provision is unenforceable and Kansas law does not apply. See Opp'n at 21–22. Instead, Mobile Now contends, either Virginia law or D.C. law applies. See id.

6

To determine which state law applies, "federal courts use the conflict of law principles applied by the state in which they sit." Samenow v. Citicorp Credit Servs., Inc., 253 F. Supp. 3d 197, 202 (D.D.C. 2017) (quoting McMullen v. Synchrony Bank, 164 F. Supp. 3d 77, 87 (D.D.C. 2016)). "Under District of Columbia choice-of-law principles, the absence of a true conflict compels the application of District of Columbia law by default." Samenow, 253 F. Supp. 3d at 202 (quoting Signature Tech. Sols. v. Incapsulate, LLC, 58 F. Supp. 3d 72, 80 (D.D.C. 2014)). A true conflict is absent when D.C. law and the other state's law are "[1] the same; [2] different but would produce the same outcome under the facts of the case; or [3] when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws." Id. at 203 (quoting Greaves v. State Farm Ins. Co., 984 F. Supp. 12, 14 (D.D.C. 1997), aff'd, 172 F.3d 919 (D.C. Cir. 1998)).

Here, the Court finds "no relevant, substantive difference" between D.C., Kansas, and Virginia contract principles with respect to the issues presented, "and to the extent there are differences, they do not affect the outcome of this case given the factual circumstances." Samenow, 253 F. Supp. 3d at 203 (taking the same approach in resolving a motion to compel arbitration); Brown v. Dorsey & Whitney, LLP, 267 F. Supp. 2d 61, 71 (D.D.C. 2003) (same). Hence, the Court will analyze the agreement under D.C. law, and will cite Kansas and Virginia law only to the extent necessary to resolve arguments that applying those states' laws would produce a different result.

Having decided to apply D.C. law, the Court turns first to whether the parties entered a valid agreement to arbitrate. Because under the FAA "an arbitration provision is severable from the remainder of the contract," Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 71 (2010) (citation omitted), that question is limited to whether the parties agreed to the specific provisions in the

7

Agreement mandating arbitration. Section 2 of the FAA "does not permit . . . federal court[s] to consider claims of fraud in the inducement [or other grounds of invalidity] of the contract generally." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967); see also Rent-A-Center, 561 U.S. at 71 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.").

Under D.C. law, "[f]or an enforceable contract to exist, there must be both (1) agreement as to all material terms; and (2) intention of the parties to be bound." United House of Prayer for All People v. Therrien Waddell, Inc., 112 A.3d 330, 337–38 (D.C. 2015) (citation omitted). "[A]greement as to material terms 'is most clearly evidenced by the terms of a signed written agreement . . . .'" Id. at 338 (quoting Kramer Assocs., Inc. v. Ikam, Ltd., 888 A.2d 247, 252 (D.C. 2005)). The intention to be bound by the terms of an agreement "can be found from written materials, oral expressions and the actions of the parties." Duffy v. Duffy, 881 A.2d 630, 637 (D.C. 2005).

Mobile Now has conceded that it "accepted Sprint's offer . . . and counter-signed" the Agreement, a copy of which is filed on the record. See Am. Compl. ¶ 48. It has further conceded that it signed the Agreement despite knowing that it contained the "dispute resolution [procedure] in question," id. ¶ 109, and that it operated under those provisions until Sprint terminated the Agreement for cause, see id. ¶ 64. As described above, the dispute resolution procedure mandates mediation, if Sprint so elects. If Sprint declines to mediate, or mediation continues beyond a certain number of days, the parties may initiate arbitration. See Agreement at 61–63. Sprint, for its part, has submitted (1) two previous signed agreements between the parties that contain substantively the same dispute resolution procedures covering the period between 2011–2018, see 2011 Authorized Representative Agreement, 59–61; 2014 Authorized Representative Agreement,

8

97–100; (2) a declaration from one of its senior executives averring that between 2017 and 2018 the parties "engaged in nine months of review and negotiations" before executing the Agreement, Ex. 1 to Mot. to Compel [ECF No. 24-1] at ¶ 12; and (3) a 2017 email from Mobile Now expressing its general counsel's specific concerns with language in a draft of the Agreement, including with aspects of the dispute resolution provisions, see Ex. C to First Mot. to Compel Arbitration [ECF No. 8-3] at 1–3.

Based on these materials and Mobile Now's concessions, the Court finds that Sprint has satisfied its initial burden to "present evidence sufficient to demonstrate an enforceable agreement to arbitrate." Skrynnikov, 943 F. Supp. 2d at 175–76 (citation omitted). Hence, the burden shifts to Mobile Now "to show that there is a genuine issue of material fact as to the making of the agreement [to arbitrate]." Id. at 175–76.

Mobile Now argues that the agreement to arbitrate is unenforceable on essentially two grounds: it was fraudulently induced and it is unconscionable. The Court will address each argument in turn.

### A. Fraudulent Inducement

To succeed on a claim of fraudulent inducement, Mobile Now must establish the classic elements of fraud: (1) a false representation, (2) made in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action taken that is in reliance upon the representation. See Hercules & Co. v. Shama Rest. Corp., 613 A.2d 916, 9224 (D.C. 1992). "[I]n cases involving commercial contracts negotiated at arm's length, there is the further requirement (6) that the defrauded party's reliance be reasonable." Id.; see also Jacobson v. Hofgard, 168 F. Supp. 3d 187, 195 (D.D.C. 2016) (summarizing D.C. law).

9

In the context of a challenge to the enforceability of an arbitration clause, the fraud must be in the inducement of the agreement to arbitrate, not "in the inducement of the contract generally." Prima Paint Corp., 388 U.S. at 404; see Rent-A-Center, 561 U.S. at 70–71. As the D.C. Court of Appeals put it, "a party who seeks to avoid arbitration on the grounds of fraudulent inducement [must] challenge the 'making' of the arbitration clause itself, and not merely the making of the contract in which the arbitration clause is contained or the 'scheme' by which both were allegedly negotiated." Hercules & Co., 613 A.2d at 924. Moreover, when the "policy that favors arbitration of disputes . . . is considered together with the requirement that fraud be pleaded with particularity and proved by clear and convincing evidence, parties to arbitration agreements should not be readily permitted to avoid them simply by invoking in their pleadings the pejorative cry of fraud." Id. at 923 (internal citations and quotation marks omitted). In other words, Mobile Now must clear a high bar, alleging—specifically as to the agreement to arbitrate—"the time, place and content of the false [representations], the fact misrepresented and what was retained or given up as a consequence of the fraud." Xereas v. Heiss, 933 F. Supp. 2d 1, 10 (D.D.C. 2013) (first alteration in original) (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1278 (D.C. Cir. 1994)).

Here, Mobile Now alleges that Sprint executives failed to make good on extracontractual promises that Mobile Now would receive certain payments if it signed the Agreement. Specifically, Mobile Now alleges that "Sprint . . . intentionally made numerous false representations of fact" concerning its alleged promise that, upon signing the Agreement, Sprint would reimburse to Mobile Now $400,000 that it previously had paid to Sprint as part of a settlement. Am. Compl. ¶ 105; see also id. ¶¶ 35, 51. This false promise was "an inducement for [it] to sign the [] Agreement," Mobile Now claims, and was intentionally deployed to "mislead."

10

Id. ¶ 108. And it "not only [went] to the heart of the [] Agreement," but "also to the dispute resolution [procedure] in question." Id. ¶ 109. Sprint denies that it ever made this promise. Def.'s Reply to Opp'n ("Reply") [ECF No. 31] at 2, 6–7.

These allegations fail to support a claim of fraudulent inducement. When an agreement contains an integration clause, as here, see Agreement at 24, "any alleged prior representations that a party will or will not do something in the future that are not included in that written contract generally do not support a fraud-in-the-inducement claim." Drake v. McNair, 993 A.2d 607, 624 (D.C. 2010). Such assertions typically "fail[] to demonstrate that the representations at issue were either material or reasonably relied upon because they were not included in the final, fully integrated agreement between [the parties]." Id. at 623. That is the case here. Indeed, "[i]f [Mobile Now] considered these [alleged] assurances important enough to induce it to agree to the contract (including the [dispute resolution procedure]), it could have conditioned its agreement on the explicit inclusion of those representations in the contract." Hercules, 613 A.2d at 932. And if Sprint "refused to go along, [Mobile Now] could have walked away from the deal." Id. But Mobile Now did none of these things and instead signed the contract. It is therefore "bound by the terms of the instrument to which it affixed its name, and cannot now be heard to complain that it was 'browbeaten' or fraudulently induced into agreeing to arbitrate." Id. at 933.

Moreover, Mobile Now has not met its burden to establish a genuine issue of material fact as to whether it was fraudulently induced to enter the agreement to arbitrate. The purported false promise of payment went to the "heart" of its agreement to arbitrate, Mobile Now alleges, because it "indicated 'major concerns' as to the one-sided nature of the dispute resolution [procedure]," and it "ultimately only agreed to sign the documents upon reliance that Sprint would fulfill its pre-contractual promise to pay the $400,000." Compl. ¶ 109. But Mobile Now has provided no

11

evidence of communications or other materials suggesting that anyone at Sprint ever made the purported false promise. Nor do any of the records of negotiation and communication that Sprint has submitted mention such a promise. See, e.g., Ex. 1 to Reply [ECF No. 30-1] at 1–7; Ex. 2 to Reply [ECF No. 30-2] at 1–3; Ex. 3 to Reply [ECF No. 30-3] at 1–4; Ex. C to First Mot. to Compel Arbitration at 1–3. Hence, the Court rejects Mobile Now's contention that the agreement to arbitrate is unenforceable because it was fraudulently induced.

### B. Unconscionability[5]

Under D.C. law, unconscionability renders a contract unenforceable if the contract is both procedurally and substantively unconscionable.[6] Fox v. Computer World Servs. Corp., 920 F. Supp. 2d 90, 97 (D.D.C. 2013) (citing Urban Invs., Inc. v. Branham, 464 A.2d 93, 99 (D.C. 1983)). "A contract is procedurally unconscionable where a party lacked meaningful choice as to whether to enter the agreement." Id. at 97. To assess whether the parties had a meaningful choice, "the Court must ask whether each party to the contract, 'considering his obvious education or lack of

---

[5] Mobile Now contends at the outset that Sprint is collaterally estopped from arguing that the agreement to arbitrate is enforceable because a Washington state court ruled that a nearly identical dispute resolution procedure in another Sprint distribution Agreement was unconscionable. Opp'n at 1–3, 24; see Ex. 1 to Opp'n ("Pagecom Order") [ECF No. 26-1]. But for collateral estoppel, or issue preclusion, to apply, "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case." Martin v. Dep't of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992)). The Pagecom case involved a different party, different legal issues, and different facts. See Pagecom Order ¶¶ 1.1–1.14. For instance, the court there emphasized that Sprint's pre- and post-litigation conduct was "callous and unconscionable," and that its conduct "would fairly be considered a waiver of the Dispute Resolution process." Id. ¶¶ 1.9–1.14. Because the Court's unconscionability analysis here involves different factual and legal questions, issue preclusion is inapplicable.

[6] Mobile Now suggests that Virginia applies a different standard that does not require both substantive and procedural unconscionability, possibly resulting in a different outcome. See Opp'n at 25. The Court disagrees. Under Virginia law, a contract is unconscionable if "no man in his senses and not under a delusion would make [it], on the one hand, and [] no fair man would accept [it], on the other." Smyth-Bros.-McCleary-McClellan Co. v. Beresford, 104 S.E. 371, 382 (Va. 1920); see also Chaplain v. Chaplain, 682 S.E. 2d 108, 113 (Va. Ct. App. 2009) (same). Courts interpreting this standard have held that it requires establishing both substantive and procedural unconscionability. Lee v. Fairfax Cty. School Bd., 621 F. App'x. 761, 763 (4th Cir. 2015) ("Unconscionability has both a substantive and procedural element.") (applying Virginia law); Sanders v. Certified Car Ctr., Inc., CL-2016-3834, 2016 WL 9076185, at *2 (Va. Cir. Ct. May 24, 2016) ("[A] court will not enforce a contract or contract provision if it is both procedurally and substantively unconscionable.").

it, ha[d] a reasonable opportunity to understand the terms of the contract, or [whether] the important terms [were] hidden in a maze of fine print and minimized by deceptive [] practices.'" White v. Four Seasons Hotels and Resorts, 999 F. Supp. 2d 250, 257 (D.D.C. 2013) (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965)).

Mobile Now did not lack a meaningful choice here. This was not a contract of adhesion between a powerful corporation and an individual consumer. Mobile Now is a sophisticated party—self-described as "a business with a conservative valuation of somewhere around $50,000,000," Am. Compl. ¶ 69—that had the benefit of counsel. Not only did Mobile Now have ample opportunity to negotiate the Agreement, but it actually did so, participating in a nearly year-long, arms-length bargaining process during which it negotiated for alterations to the Agreement.[7] Am. Compl. ¶¶ 31–38; see Ex. 1 to Mot. to Compel ¶ 12; Ex. 1 to Reply at 1–6 (emails evidencing ongoing negotiations); Ex. C to First Mot. to Compel Arbitration at 2–3 (email from Mobile Now to Sprint containing "initial comments from [Mobile Now's] legal counsel on the contract"). Courts have rejected claims of procedural unconscionability under similar circumstances. See Kenyon Ltd. P'ship v. 1372 Kenyon St. Nw. Tenants' Ass'n, 979 A.2d 1176, 1186 (D.C. 2009) (noting that entity could not have established a lack of meaningful choice because it was "a sophisticated group, represented by counsel" that entered a contract "for the purpose of taking advantage of" its benefits); Hart v. Vt. Inv. Ltd. P'ship, 667 A.2d 578, 586 (D.C. 1995) ("In this case, given the sophistication of the negotiating parties, and the arm's length bargaining which occurred, we cannot say [the plaintiff] was denied a meaningful choice.").

---

[7] Mobile Now's response that it did not, in the end, receive much benefit from these alterations, see Opp'n at 12 & n.7, is irrelevant to whether it could understand the terms of, and hence had a meaningful choice to enter, the Agreement. See White, 999 F. Supp. 2d at 257.

13

Mobile Now responds that it lacked meaningful choice because Sprint allegedly owed it a substantial amount of money, which Sprint would only repay if Mobile Now signed the Agreement. See Opp'n at 11. This argument is unconvincing. Mobile Now could have walked away from the negotiating table and sought money that it was purportedly owed through mediation, arbitration, or litigation, as appropriate. There is no plausible allegation, or any record evidence, suggesting that signing the Agreement was Mobile Now's only option. Moreover, the relevant agreement is the agreement to arbitrate, and Mobile Now previously had chosen to enter contracts with Sprint containing substantively the same dispute resolution procedure in both 2011 and 2014. See 2011 Authorized Representative Agreement at 59–61; 2014 Authorized Representative Agreement at 97–100.

Because Mobile Now has not plausibly claimed—or submitted any evidence to suggest—that it somehow lacked a meaningful choice to execute the Agreement, the Court finds no procedural unconscionability.[8]

Ordinarily, when an agreement to arbitrate is not procedurally unconscionable, substantive unconscionability alone will not render it unenforceable. See Urban Invs., 464 A.2d at 99. There is, however, an exception to this rule: substantive unconscionability alone may render a contract unenforceable "in an egregious situation." Id. (citation omitted). This exception is narrow; indeed, "there do not appear to be any reported D.C. cases finding such an 'egregious' scenario." Ruiz v.

---

[8] Mobile Now also argues at length that the arbitration clause is procedurally unconscionable or otherwise void because Sprint delivered the Agreement as a document written in nine-point type. Opp'n at 32–33. Mobile Now points to a Virginia statute requiring contracts, "where printed," to be written in ten-point type or larger. Va. Code § 11-4 (emphasis added). Even if Virginia law applies, this argument does not survive even the most cursory scrutiny. The parties clearly exchanged the Agreement electronically. See Opp'n at 8 ("By June 5, 2017, Sprint finally provided Mobile Now with a version of the [] Agreement in MS Word format . . . ."). A Word document is not a "printed" contract. If Mobile Now had trouble reading the document, it could have electronically increased the size of the type. Moreover, decisions interpreting the cited ten-point type requirement have held that it "merely changes the rule of evidence" in cases involving the sale of goods, permitting "the introduction of oral evidence by [a] purchaser [that contradicts] provisions of [a] contract . . . printed in small type." Moore v. Aetna Cas. & Sur. Co., 155 S.E. 707, 713 (Va. 1930). Those circumstances are not relevant here.

Millennium Square Residential Ass'n, 156 F. Supp. 3d 176, 180 (D.D.C. 2016). Nevertheless, the Court will consider Mobile Now's objections to the dispute resolution procedure under the "egregious" exception.

Mobile Now objects to the provision providing that "[i]t is expressly understood by [Mobile Now] that this dispute resolution process may only be invoked regarding Sprint's right to terminate the . . . Agreement after the termination has gone into effect." Agreement at 61. Sprint issued a notice of termination on March 19, 2019, but "delayed the effective date of the termination until April 18, 2019." Opp'n at 27. Because it could not initiate the dispute resolution process during that one-month period, Mobile Now says, "[it] was left to die on the vine without any access to any dispute resolution forum," causing it to suffer "significant and expanding damage for every day that pass[ed]." Id. at 27–28. Sprint responds that this provision is hardly unconscionable—it merely prevented Mobile Now from challenging Sprint's right to terminate the Agreement "during the time period between receiving notice of termination for cause and the termination's effective date," a challenge which would delay any termination indefinitely. Reply at 12.

The Court is not convinced that the provision resulted in so "egregious [a] situation" as to render the agreement to arbitrate unenforceable. The Court may have been more sympathetic if, for instance, Mobile Now had sought injunctive or other emergency relief upon receiving the notice of termination, and then argued that, to the extent the Agreement foreclosed any possibility of timely relief in any forum, it was unenforceable. But that is not what occurred here. Instead, Mobile Now filed this lawsuit weeks after the termination notice and has litigated it over the course of months. Although the provision in question undoubtedly favors Sprint, it is difficult to see, under such circumstances, what is so "egregious" about this situation.[9]

---

[9] Moreover, even if somehow unenforceable, this provision is severable. Unconscionable provisions of an arbitration clause can be severed if they are not integral to the agreement to arbitrate. See Rent-A-Center, 561 U.S. at

15

Next, Mobile Now complains that the dispute resolution procedure "precludes the use of attorneys" at arbitration, and therefore violates the policies underlying the Sixth Amendment right to counsel. Opp'n at 31–32. For this argument, Mobile Now relies exclusively on a clause stating that "only" a "corporate officer or Owner/Proprietor . . . or person holding a position of equivalent or greater authority within" Mobile Now "may direct the resolution of a Dispute" between the parties. Agreement at 61. But that clause says nothing about, and relates in no way to, the parties' right to use or employ counsel. Indeed, the only mention of counsel in the dispute resolution procedure is to state that the parties are <u>permitted</u> to "bring counsel and/or other representatives of the party" to any mediation. <u>Id.</u> The Court therefore rejects this argument.

In a similar vein, Mobile Now contends that the Agreement bars it from arbitrating disputes so long as Sprint declines to mediate. Opp'n at 28–29. This misconstrues the plain text of the contract. The relevant provisions say only that arbitration is not <u>immediately</u> available <u>if</u> Sprint elects to mediate the dispute. <u>See</u> Agreement at 61 (providing that Mobile Now "may not commence arbitration until a Dispute has been subject to mediation . . . <u>if required by Sprint</u> [pursuant to] Section 2"). If Sprint declines that option, the Agreement provides that disputes shall be arbitrated. <u>See id.</u> And even if Sprint requires mediation, disputes may still be submitted for arbitration after 45 days. <u>See id.</u>

Finally, the Court rejects Mobile Now's argument that the dispute resolution procedure is unconscionable because it is "ambiguous and vague throughout." Opp'n at 25. To start, the Court finds no authority to support the proposition that vagueness, without more, is a ground for

---

70–71. This provision about the timing of arbitration—which delays Mobile Now's right to challenge a termination on the grounds that the termination is improper until after it has gone into effect—is peripheral to the parties' basic agreement to arbitrate disputes. Indeed, Mobile Now argues that the provision impermissibly <u>limited its access to arbitration</u>, not its right to sue in court. Hence, it cannot be said that the parties' mutual assent to arbitrate disputes somehow hinged on this provision.

substantive unconscionability. The cases Mobile Now cites for the proposition that vague contracts are unenforceable all hold that <u>agreements to agree</u> are too vague to enforce. <u>Beazer Homes Corp. v. VMIF/Anden Southbridge Venture</u>, 235 F. Supp. 2d 485, 491–92 (E.D. Va. 2002); <u>Kay v. Prof'l Realty Corp.</u>, 281 S.E. 2d 820, 822 (Va. 1981); <u>Allen v. Aetna Cas. & Sur. Co.</u>, 281 S.E. 2d 818, 819–20 (Va. 1981).[10] Regardless, the Court finds that the dispute resolution process is not vague; the relevant provisions clearly provide that the parties mutually agree to arbitrate disputes arising out of or relating to the Agreement.

For the foregoing reasons, the Court finds that the relevant provisions of the Agreement are not unconscionable.[11] Having disposed of Mobile Now's various challenges to the Agreement's validity, the only remaining question is whether Mobile Now's claims fall within its scope.

### IV. SCOPE OF THE AGREEMENT TO ARBITRATE

The Agreement provides that the dispute resolution procedure applies to "any controversy, dispute, or claim of every kind . . . and nature arising out of or relating to the negotiation, construction, validity, interpretation, performance, enforcement, operation, breach, continuation or termination of this Agreement." Agreement at 61. Mobile Now argues that Count Three, which

---

[10] Mobile Now elsewhere argues that the arbitration clause is an unenforceable illusory promise and an "agreement to agree." Opp'n at 30 n.24. But that argument is premised, again, on the notion that Sprint can forever bar Mobile Now's right to arbitration by simply declining to initiate mediation. <u>Id.</u> As already discussed, this misreads the relevant dispute resolution provisions. Hence, the Court rejects this argument.

[11] Mobile Now also argues that the arbitration clause lacks mutuality because it is one-sided. Opp'n at 28 & n.19. Lack of mutuality does not render an agreement to arbitrate unenforceable so long as the agreement is supported by consideration. <u>See</u> <u>King v. Indus. Bank of Wash.</u>, 474 A.2d 151, 156 (D.C. 1984) ("Mutuality of obligation is merely another name for the requirement of consideration in bilateral contracts."); <u>United States ex. rel. Harbor Constr. Co. v. T.H.R. Enters., Inc.</u>, 311 F. Supp. 3d 797, 803 (E.D. Va. 2018) ("[C]onsideration is essential; mutuality of obligation is not, unless the want of mutuality would leave one party without a valid or available consideration for his promise.") (quoting <u>Turner & Happersett v. Hall & Connor</u>,104 S.E. 861, 863 (Va. 1920)). In this case, it is indisputable that the arbitration clause was supported by consideration. Mobile Now responds that there was no mutuality because Mobile Now was "forbidden from obtaining relief [for some claims during certain times] in any forum." Opp'n at 28 n.19. But that argument goes to unconscionability, not to mutuality. Hence, the Court rejects Mobile Now's mutuality argument.

17

alleges Sprint's failure to pay commissions owed under the Prepaid Distribution Agreement, falls outside the scope of that provision. Opp'n at 19; see Reply at 16–17. Prepaid products and services, Mobile Now explains, permit consumers to pay for mobile phone services in advance rather than through a monthly plan, and are "branded under separate names—in Sprint's case, "Virgin Mobile, Boost, and Broadband2Go." Am. Compl. ¶¶ 90–95. According to Mobile Now, the Agreement largely covers Mobile Now's role as a distributor of Sprint's post-paid products, such as monthly service plans, whereas the Prepaid Distribution Agreement, a separate contract, covers its role as a distributor of Sprint's prepaid products. See id. The Prepaid Agreement, Mobile Now alleges, contains no arbitration clause, and therefore is not within the scope of the arbitration clause. See Opp'n at 35–36. Sprint responds that the Prepaid Distribution Agreement and the Agreement are closely linked, and therefore Count Three is nonetheless a claim arising out of or relating to the Agreement's breach, continuation or termination. See Mot. to Compel at 17 n.7.

The Court agrees with Sprint. Where a valid agreement to arbitrate exists, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (citation omitted). "Such a presumption is particularly applicable where," as here, "the clause is . . . broad." Id.

In light of that presumption, the Court finds that Count Three "relat[es] to" the Agreement's "operation," Agreement at 61, and is therefore arbitrable. The substance of Count Three is that Sprint failed to pay commissions it owed to Mobile Now for the sale of Sprint's prepaid products. Am. Compl. ¶¶ 117–19. In addition to setting up the basic business relationship between the

18

parties and mentioning prepaid products and services at various points throughout, see, e.g., Agreement at 3, 21, 59, the Agreement contains an entire exhibit specifically detailing the commissions and other relevant terms that govern prepaid products and services under the heading "Sprint Prepaid Wireless Commission Plan," Sealed Agreement at 43–46. At minimum, then, a claim which alleges Sprint's failure to pay commissions owed on prepaid products and services "relates to" the Agreement. Moreover, Sprint has alleged that the Prepaid Distribution Agreement contains a provision permitting it to "offset any and all amounts owed" by amounts owed under the Agreement. See Mot. to Compel at 17 n.7.

Mobile Now perhaps could have rebutted the presumption of arbitrability had it filed a copy of the Prepaid Distribution Agreement, adequately responded to Sprint's argument that the contracts are intertwined, and explained how the alleged breach concerning commissions on prepaid products does not even "relate" to the myriad terms governing prepaid products and services in the Agreement. But Mobile Now has done none of those things. Instead, it has summarily asserted that Count Three arises under a different contract concerning prepaid products (that this Court has not seen), and that arbitration is therefore unwarranted. That is not enough for the Court to say with "positive assurance" that the Agreement's dispute resolution process does not cover the asserted dispute. Hence, the Court finds that Count Three falls within the agreement to arbitrate, and is arbitrable.[12]

---

[12] Mobile Now separately contends that its "fraud claim challenging the validity of the contract's arbitration clause and the contract as a whole" falls outside the scope of the arbitration agreement. Opp'n at 36. If the arbitrator finds that the agreement to arbitrate was fraudulently induced, Mobile Now reasons, then the case never should have proceeded to arbitration to begin with, proving that the fraud claim is outside the scope of the arbitration clause. See id. This argument confuses validity and scope. The scope inquiry assumes a valid arbitration agreement. To the extent Mobile Now's fraud claim merely repeats its claim that the agreement to arbitrate is unenforceable because it was fraudulently induced, the Court has rejected that claim above. To the extent the fraud claim goes beyond that allegation, it arises out of and relates to the Agreement, and is arbitrable.

The only remaining matter is whether to stay or dismiss the case. Although the D.C. Circuit has not firmly resolved whether dismissal or stay is warranted when a motion to compel arbitration is granted, courts in this district have held that when "there are no issues left for this [C]ourt to resolve, . . . 'it is appropriate to dismiss this case in its entirety.'" Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp., Civil Case No. 18-1618 (RJL), 2019 WL 224291, at *6 (D.D.C. Jan. 15, 2019) (citation omitted); see Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., Civil Action No. 05-151 (GK), 2006 WL 1793295, at *3 (D.D.C. June 28, 2006) (dismissing case after holding that "all of Plaintiff's claims must be submitted to arbitration"). Because all of plaintiff's claims are arbitrable, the Court will take that approach here and dismiss this case.

## CONCLUSION

For the foregoing reasons, the Court will grant Sprint's motion to compel arbitration, and will dismiss the amended complaint. A separate order will issue on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: August 19, 2019